# CHARLESTON

CARNEY *v*. REASE.

Submitted June 8, 1906.    Decided November 27, 1906.

1. BAILMENT BY HIRING—*Deviation from Contract.*
   The question whether, when a horse is hired for only a partic-
   ular trip, it is used for a further trip, such deviation from the con-
   tract will alone render the hirer liable for the horse dying during
   the use by the hirer, without proof that its death came from its use
   for the further trip discussed,    (p. 677.)

2. BAILMENT BY HIRING—*Loss of Animal.*
   If a horse hired to work in a wagon while at work become
   exhausted and sick, the hirer, knowing its condition, must de-
   sist from so working it, else if it die, he will be liable for its value.
   (p. 678.)

Error to Circuit Court, Wetzel County.

Action by J. L. Carney against A. B. Rease and others.
Judgment for plaintiff, and defendant brings error.

*Affirmed.*

W. G. SNODGRASS and E. L. ROBINSON, for plaintiffs in
error.

E. B. SNODGRASS, M. R. MORRIS, and PRESLEY D. MORRIS,
for defendant in error.

BRANNON, JUDGE:

Rease, Heasly and Dale, partners in drilling oil wells, hired
of Carney a horse to be used in a wagon with a horse of the
firm in hauling tools and supplies in the oil field.  The horse
was so used five days and returned to Carney.  Three days later
the firm sent its driver to him to hire the horse of Carney
again.  The horse was wanted, along with a horse of the firm, to
haul an oil well stem.  Carney says it was to be hauled to
Littleton, nine miles; whilst the driver, introduced by the
plaintiff, says it was to be used to haul the stem to the
Johnston well four miles further than Littleton.    On Fri-
day the horse worked in the wagon in hauling the stem to
Littleton.    On the next day it was worked hauling the stem
to the Johnston well, and in hauling another stem for repair
from the Johnston well to Littleton.    The team staid over

Saturday night at Littleton. Sunday morning the horses started from Littleton back home to Carney's drawing two empty wagons. These three days were very hot July days. When the team came to a point eight miles from Littleton the Carney horse died. Carney brought suit before a justice, which went by appeal to the circuit court of Wetzel county, and upon the close of the plaintiff's evidence the defendants, offering no evidence, demurred to the plaintiff's evidence, and the court having given judgment for the plaintiff, the defendants brought the case here.

The plaintiff claims that the horse was hired only for the trip from Carney's to Littleton, and that the use of the horse for the additional distance of four miles and return hauling a stem was outside the contract, a misuse of the horse, and that that further use alone, without proof that the horse's death came from that additional service, renders the defendants liable. Here is a volume of conflicting cases and texts. There is much authority for the position that when an animal is hired for a fixed time, and the bailee continues to use him longer, or where he is hired to drive to a certain place by a certain route, and the bailee drives him to a different place, or by a different route, or beyond the place contemplated by the contract, such departure from the contract is a conversion of the horse, for which the owner may maintain trover. 2 Cyc. 312; 3 Am. & Eng. Ency. L, (2nd Ed.) 752. If a loss of the animal occur, so that it cannot be returned, under this rule the hirer would be responsible. Story on Bailments, section 413; 1 Tucker; book 2, 359. Likely this is the rule sustained by greater authority. Under this rule mere departure from the contract makes the party liable, no matter whether the loss came from such departure or not. But another line of cases holds that such departure from the contract does not alone of itself impose liability, but it must appear that the loss was because of such departure. Van Zile on Bailment, section 127; *Farkas* v. ~~Barton~~, 12 *Powell* L. R. A. 397. Which line does our law follow? In *Spencer* v. *Pilcher*, 8 Leigh 565, a slave was hired with the understanding that he was to be employed on a farm, whereas he was taken on a voyage on a boat down the Ohio and Mississippi rivers, and was drowned on the voyage. This case cannot be quoted for the rule of absolute liability because

of mere departure from the contract, for the reason that the slave perished while being used in violation of the contract. The same as to *Harvey* v. *Skipwith*, 16 Grat. anno. 393, where a slave was hired under an explicit agreement not to use him in blasting rock, but he was so used, and in such use was injured from a blast. In *Harvey* v. *Epes*, 12 Grat. 153, is a full discussion of this subject. Slaves were hired to be worked on a railroad in Amelia county, but were worked on the railroad in Chesterfield county, and while working in Chesterfield sickened and died. The court held that the working of the slaves in Chesterfield was not, of itself, a conversion making the hirers immediately responsible for their value, whether occasioned by such wrongful act or not; but that to make them liable it must be found that the death was occasioned by the act of removing and working the slaves in Chesterfield county. So, our law is that mere deviation from the contract will not alone render the hirer liable for the loss of a hired horse. The opinion in *Harvey* v. *Epes*, construes, I think, correctly, the case of *Spencer* v. *Pilcher*, as holding this rule. Counsel for Carney rests his case largely on the rule of absolute liability; but I do not think even if there were a contract limiting the use of the horse, there could be a recovery on that ground, since it does not appear that the death of the horse occurred, during, or came from, the use of the horse on the trip from Littleton to the Johnston well. There is no evidence of misuse of the horse on the extra trip. True, it is proven, that the horses were heated that hot day; but that is very usual, not abuse. That does not create liability. There is no showing that the death of the horse was caused by the extra trip. That trip was in the same line of work for which the horse was hired. He did not die during that trip. Hence, under *Harvey* v. *Epes* there can be no recovery because of such deviation from the contract. Likely if the horse had died while on the extra trip, the presumption would be that the extra trip was the cause of the death, throwing the burden on the hirer to disprove that fact. The doctrine of *Harvey* v. *Epes* is considered as sound in a note by Freeman in 12 Am. Dec. 621. I consider the other rule extreme and hard. See *Doolittle* v. *Shaw*, 54 Am. St. R. 562, citing the *Harvey Case*, and holding its principles. President Lincoln as counsel successfully

maintained this position in *Johnson* v. *Weedman*, 5 Ill. (4 Scammon) 495.

But the matter just discussed is discussed because it seems proper to do so, as counsel so strongly summon it to their aid, though it may be regarded as *obiter*, since we do not find that the hiring was limited in time or work, so as to be special. Carney introduced the driver as his witness, and he says there was no limited contract. Carney indefinitely says there was. Perhaps under a demurrer we should take Carney's statement but for considerations supporting the driver. Carney does not say that he imposed any limit on the use of the horse. Carney had hired the horse to the defendants, knowing it was to do general hauling in the drilling business, without limitation of time or place of work or use. The horse was returned after five days use, and in three days the driver went to get the horse again, and we may look upon this as a hiring similar in character to the former hiring, or a continuation of it. All that Carney says to prove a limited contract is, that when asked whether the driver told him what he wanted with the horse Carney answered, "He said he wanted to take a stem to Littleten." This was a mere remark of the driver, hardly a contract of limitation.

Whilst so far there is no ground of recovery, we think there is a ground for recovery. If it appears that the driver misused the horse, negligently used it, there is a liability. There is evidence that the horse was hot and tired when it got back to Littleton Saturday night. The driver, Swick, says so, and thus was apprised of the fact that the heat and labor affected the horse. Next day on the road, in great heat, it is proven by Musgrave that as the team passed his house he saw that the horse was ailing, lagging back on the single tree, and asked Swick what was the matter with it, and Swick replied that the horse was sick, "given out," and they wanted to get him home, if they could, "but didn't know whether they could or not." Musgrave said the horse was just about able to walk. Postlewait states that Swick told him that on the trip going over to Littleton and the Johnston well the horse got too hot, and he brought him back to Littleton, and started next morning and noticed coming up Knob Fork hill that the horse "began to fag." This was before the

team reached Musgrave's. Thus, Swick knew the horse was hot Saturday, and on Sunday knew the horse was exhausted and sick from the terrible heat or other cause. We are allowed to say that he must have been very sick, as he died only a mile and a half from Musgrave's. Does it need authority to show that it was Swick's duty before he reached Musgrave's, and surely at Mugrave's, to stop using the horse, and unhitch him from the two wagons? Story on Bailments, section 405, says that if a hired horse is exhausted the hirer is bound to abstain from using the horse, and if he pursues his journey with the horse, he is liable for all the injury occasioned thereby. He says not only that, but also that the hirer must procure a farrier, if to be had. The same is laid down as to a sick horse in 2 Cyc. 312, note. See 57 Am. St. R. 33. But Swick drove the horse on that boiling day a mile and a half, the last half mile up a hill of heavy grade, until he died. The testimony of Swick betrays a consciousness that he had not used the horse right.

For this reason of negligent misuse of the horse we affirm the judgment.

·          *Affirmed.*